UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6168-CR-FERGUSON
UNITED STATES OF AMERICA,            (Magistrate Judge Snow)

    Plaintiff,

vs.

PAUL ROBIN SALTZ,

    Defendant.

_____/



### DEFENDANT'S MOTION FOR SPECIFIC BRADY
### MATERIAL AND INCORPORATED MEMORANDUM OF LAW

Defendant, PAUL ROBIN SALTZ, through undersigned counsel and pursuant to the dictates of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and its progeny, respectfully moves this Court for an order requiring the government to disclose and provide the specific information set forth below that is known, or that with the exercise of due diligence, should be known to the government, as it is information favorable to Defendant on the issues of guilt or punishment:

> (A) The name of and information identifying each co-defendant or other accomplice witness who is expected to testify at the trial in this case (hereafter "the accomplice witness");
>
> (B) Any statement made or information or document provided by the accomplice witness that conflicts or is inconsistent, in part or in whole, with: (1) the statement of another accomplice or other prospective witness, (2) a prior statement made by the same accomplice witness, with regard to the subject matter of the expected trial testimony of the witness, or (3) any other witness or document;
>
> (C) Any information, including notes or other evidence of communication between the government and the accomplice witness or his attorney, that reveals any



58

<u>variation(s) in the proffers</u> of testimony provided by
the accomplice witness prior to and leading up to the
agreement of the accomplice witness to testify at
trial;

(D) Any and all statements by the accomplice witness,
including written statements and oral statements
summarized or noted in government notes, memoranda or
reports which <u>do not mention</u> Defendant by name or
description;

(E) Any records of or information, whether or not
memorialized in a memorandum, report or other writing
regarding payments, promises of immunity, leniency,
preferential treatment or other inducements made to the
accomplice witness, or offered or afforded to any
family member, friend or associate of the accomplice
witness, in exchange for said witness' cooperation,
including the dismissal or reduction of charges,
assisting in matters of sentencing or deportation, or
promises or expectancies regarding payments for
expenses or testimony or eligibility for any award or
reward;

(F) Any information, including notes or other evidence
of communication between the government and the
accomplice witness or his attorney, that reveals the
nature of the negotiation process that led to the
agreement of the accomplice witness to testify at
trial;

(G) Any information or records concerning any actual or
implied threats of investigation or prosecution
(including deportation, exclusion, etc. by INS) made by
the government to the accomplice witness or any family
member, friend or an associate of the accomplice
witness, including information as to the underlying
conduct precipitating such investigations;

(H) The case names and numbers of any trials or
evidentiary hearings at which the accomplice witness
has testified concerning: his own prior criminal
activity; payments or rewards provided him by the
government; or any other purported law enforcement-
related matters;

(I) FBI rap sheet, NCIC printout, NADDIS, EPIC, NLETS,
ATS and TECS and any other records available to the
government reflecting the arrest, conviction and
investigative history of the accomplice witness;

(J) Any information concerning misconduct by the
accomplice witness other than in his role in the
conduct charged in the indictment in this case,

including misconduct that reflects on his lack of candor, truthfulness or law-abiding character, such as uncharged criminal conduct or fraud;

(K) All information and records revealing any potential impairment of the capacity of the accomplice witness to observe, recollect and testify about the events giving rise to the charges in this case, including impairments of sight, hearing, memory, or language, other physical or psychological disability, or narcotics or alcohol use or other dependency;

(L) If given a polygraph exam, the results of any polygraph examination administered to the accomplice witness, as well as any information concerning any refusal or failure of the accomplice witness to submit to a polygraph examination.

In support of this request, undersigned counsel submits the following memorandum of law.

<u>MEMORANDUM OF LAW</u>

**STATEMENTS OF THE ACCOMPLICE WITNESS WHICH ARE CONFLICTING OR WHICH <u>OMIT</u> ANY REFERENCE TO THE DEFENDANT.**

Any witness may be impeached by prior inconsistent statements. <u>United States v. Winkles</u>, 587 F.2d 705, 710 (5th Cir. 1979). <u>Brady</u> requires, therefore, that inconsistencies among the accounts provided by the <u>same</u> eyewitness, as well as inconsistencies between the accounts provided by <u>different</u> eyewitnesses, must be turned over to the defense. <u>Kyle v. Whitley</u>, 514 U.S. 419, 444, 453 (1995). Indeed, in <u>Schneider v. Estelle</u>, 552 F.2d 593, 595 (5th Cir. 1977), this Circuit held that the government's failure to disclose an eyewitness' prior statement that was inconsistent with the testimony of the government's key trial witness was reversible error. As the Court explained in <u>United States v. Martino</u>, 648 F.2d 384 (5th Cir. 1981):

- 3 -

> As impeaching evidence, the prior
> inconsistent statement would fall within
> disclosure requirements because <u>Brady</u>
> <u>encompasses impeachment evidence</u> as well as
> evidence favorable to the accused on the
> issue of guilt. (Emphasis added.)

Variations in successive proffers by cooperating witnesses are a special form of inconsistent statements which must be disclosed. In the very recent case of <u>United States v. Sudikoff</u>, 36 F.Supp.2d 1196, 1201-1202 (D.C. Cal. 1999), the Court held that to the extent that "proffers of an accomplice witness that led to a leniency agreement ... reveal that the witness' proposed testimony may have varied over time, they may reveal inconsistencies relevant to the accomplice witness' credibility and [thus fall] within the scope of <u>Brady</u>". As the Supreme Court observed in <u>Kyle</u>, the evolution over time of a given eyewitness' description can be fatal to its reliability". 514 U.S. at 444.

Furthermore, omission of any reference to the defendant is also clearly favorable to the defendant's case. Thus, in <u>Jones</u> <u>v. Jago</u>, 575 F.2d 1164, 1166 (6th Cir. 1978), <u>cert.</u> <u>denied</u>, 439 U.S. 883 (1978), the Court held that an eyewitness' statement which, while not expressly exonerating the defendant, made <u>no</u> <u>reference to the defendant's presence or participation</u> in the offense was <u>Brady</u> material and, therefore, the failure to disclose the statement required reversal of the defendant's conviction. This Court has similarly held that a report of a witness interview revealing circumstantial evidence that someone other than the defendant may have been the actual perpetrator of the offense constitutes <u>Brady</u> material. <u>Troedel v. Wainwright</u>, 667 F.Supp. 1456 (S.D. Fla. 1986). Indeed, this type of <u>Brady</u>

- 4 -

material, though negative or neutral in character, may be the key to a favorable defense.

Moreover, even though such a defense-favorable or neutral statement may otherwise be protected from disclosure under the Jencks Act, due process requires the government to disclose it to the defense sufficiently in advance of trial to allow the defense an adequate opportunity to investigate the evidence.    United States v. Campagnulo, 592 F.2d 852, 859 (5th Cir. 1979).

### PROMISES AND THREATS TO THE ACCOMPLICE WITNESS.

The Standing Discovery Order, paragraph D, compels disclosure of the "existence and substance of any payments, promises of immunity, leniency, preferential treatment, or other inducements made to prospective government witnesses".  By this request, Defendant seeks a full record of all consideration given to the accomplice witness and his family and associates as a result of his cooperation in this case, as well as any other case in which he may provide services.  Detailed information and records as to any type of payment or promise is, indeed, discoverable and admissible to allow the defense to establish the bias or interest of the accomplice witness in testifying against the defendant at trial.  Giglio v. United States, 405 U.S. 150 (1992); United States v. Williams, 954 F.2d 668 (11th Cir. 1992).

Unconsummated promises of financial or other awards or benefits are no less discoverable and admissible.  Indeed, where the accomplice witness harbors an expectation of a future award for his services in obtaining a conviction, such evidence is

- 5 -

crucially important to the defense. United States v. Williams, supra. So, too, is it proper impeachment to question an accomplice witness about preferential treatment given to his family. See, e.g., United States v. Nickerson, 669 F.2d 1016, 1018 (5th Cir. 1982).

Furthermore, "information that reveals the negotiation process pursuant to which [a leniency] agreement was reached ... [may] reveal the accomplice witness' motives and desire to seek an immunity agreement", rendering that information "relevant to the witness' credibility and [hence] within the scope of Giglio". United States v. Sudikoff, 36 F.Supp.2d 1196, 1201-1202 (C.D. Cal. 1999).

The Eleventh Circuit Pattern Criminal Jury Instructions, Special Instructions 1.1, 1.2 and 1.3, highlight the importance of such evidence in judging the credibility of the testimony of a cooperating witness:

> For example, a paid informer, or a witness who has been promised he will not be charged or prosecuted, or a witness who hopes to gain more favorable treatment in his or her own case, may have a reason to make a false statement because he wants to strike a good bargain with the government.

Eleventh Circuit Pattern Criminal Jury Instructions, Special Instruction 1.1. See, United States v. D'Antignac, 628 F.2d 428, 435-436, n. 10 (5th Cir. 1980); United States v. Abravaya, 616 F.2d 250 (5th Cir. 1980).

Finally, evidence that the government has threatened a potential witness to obtain his cooperation is also discoverable and admissible and, additionally, may demonstrate an

- 6 -

unconstitutional interference with the defendant's right to free access to witnesses.  See, United States v. Hendricksen, 564 F.2d 197, 198 (5th Cir. 1977); United States v. Heller, 830 F.2d 150, 152 (11th Cir. 1987).

### PRIOR TESTIMONY BY THE ACCOMPLICE WITNESS.

In Mesarosh v. United States, 352 U.S. 1 (1956), the Supreme Court reversed the defendant's conviction and remanded for a new trial to allow the defendant to present previously undisclosed evidence that the government's key witness testified falsely in similar, but unrelated proceedings.  This Circuit reaffirmed the vitality of the Mesarosh decision in United States v. Espinosa-Hernandez, 918 F.2d 911, 914 (11th Cir. 1990), holding that the government may not withhold evidence that a witness had made prior false statements in a matter within the jurisdiction of a federal agency.  See also, United States v. Williams, 500 F.2d 105, 108 (9th Cir. 1974) (granting new trial under Mesarosh to allow defendant to present to jury evidence of witness' false statements in other proceedings).  Defendant seeks any and all prior testimony of the accomplice witness to ferret out any false testimony on any prior occasion.

### PRIOR RECORD OF THE ACCOMPLICE WITNESS.

Any accomplice witness' history of criminal activity and other misconduct is relevant to consideration of his credibility and bias or motive.  See, e.g., Haber v. Wainwright, 756 F.2d 1520 (11th Cir. 1985) (prior criminal conduct relevant where witness may have been promised immunity).  Indeed, pursuant to Fed.R.Evid. 608(b), a witness may be cross-examined as to

specific instances of conduct "concerning the witness' character for truthfulness or untruthfulness".

Uncharged misconduct of a witness is thus fair game for impeachment on cross-examination. See, e.g., United States v. Ray, 731 F.2d 1361, 1364 (9th Cir. 1984) (reversible error to refuse to permit cross-examination of government witness as to alleged post-plea drug activities); United States v. Espinosa-Hernandez, 918 F.2d 911, 914 (11th Cir. 1990) (government witness' misconduct bears directly on credibility); United States v. Deutsch, 475 F.2d 55, 58 (5th Cir. 1973) (Court compelled disclosure of an accomplice witness' postal-employment personnel file where evidence failed to negate indications that the file might disclose disciplinary problems); United States v. Garrett, 542 F.2d 23, 26 (6th Cir. 1976) (conviction reversed where District Court had foreclosed discovery and cross-examination as to an undercover agent's disciplinary records, noting that such records were relevant because the agent "might well have looked upon a successful prosecution of [the defendant] as a means of having his [own] suspension [from duty] lifted"). For this reason, Courts have even held that in given circumstances a witness may be questioned regarding prior arrests not leading to conviction. United States v. Croucher, 532 F.2d 1042, 1045 (5th Cir. 1976) (witness' full arrest record relevant to showing motive to strike a good bargain with the government).

PHYSICAL OR **MENTAL** IMPAIRMENT OF, OR
SUBSTANCE ABUSE BY, THE ACCOMPLICE WITNESS.

The Fifth Circuit in <u>United States v. Partin</u>, 493 F.2d 750,
762 (5th Cir. 1974), explained why evidence relating to a
witness' mental and/or physical impairment must be disclosed:

> It is just as reasonable that a jury be
> informed of a witness' mental incapacity at a
> time about which he proposes to testify as it
> would be for the jury to know that he then
> suffered an impairment of sight or hearing.
> It all goes to the ability to comprehend,
> know and correctly relate the truth.

Courts thus universally recognize the relevance of evidence that
a witness is undergoing psychiatric treatment. <u>See</u>, <u>e.g.</u>, <u>United
States v. Lindstrom</u>, 698 F.2d 1154 (11th Cir. 1983); <u>United
States v. Butt</u>, 955 F.2d 77, 82-83 (1st Cir. 1992); <u>United States
v. Collins</u>, 472 F.2d 1017 (5th Cir. 1972); <u>United States v.
Romano</u>, 482 F.2d 1183 (5th Cir. 1973).

Similarly, use of narcotics is recognized as so material to
a witness' credibility that the defendant is entitled to know of
a government witness' narcotics use, <u>United States v. Fowler</u>, 465
F.2d 664 (D.C. Cir. 1972), and, furthermore, is entitled to a
jury instruction advising that the testimony of a narcotics user
or addict should be considered with care due to motive to lie and
impairment of ability to accurately observe. <u>See</u>, <u>United States
v. Collins</u>, 472 F.2d 1017, 1018 (5th Cir. 1972); Eleventh Circuit
Pattern Criminal Jury Instructions, Special Instruction 1.3;
Fifth Circuit Pattern Criminal Jury Instruction 1.17. Indeed, in
<u>United States v. Garner</u>, 581 F.2d 481, 485 (5th Cir. 1978), the
Court held that even though a witness was no longer using
narcotics at the time of the events of the case, his testimony

- 9 -

should be weighed with caution and the jury could "take this information into account in weighing the witness' credibility".

### POLYGRAPH RESULTS OF THE ACCOMPLICE WITNESS.

The Eleventh Circuit in <u>United States v. Piccinonna</u>, 885 F.2d 1529 (11th Cir. 1989), recognized that polygraph examination results are admissible to impeach or bolster any witness' credibility, subject to the District Court's exercise of discretion in the admission of such evidence. <u>See</u>, Fed.R.Evid. 403, 608(b). Polygraph results which tend to show that a witness has made false or conflicting statements to the government thus are relevant and discoverable. While admissibility issues may be resolved at trial, the underlying facts material to impeachment must be disclosed prior to trial to allow for adequate defense preparation. <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

### CONCLUSION

For all the foregoing reasons, Defendant respectfully requests an order pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and its progeny, requiring the government to disclose and provide the above-described specific information and material which is known, or with the exercise of due diligence should be known, to the government.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed/hand-delivered this $\underline{12^{th}}$ day of July, 2000, to:

- 10 -

```
LYNN ROSENTHAL, ESQUIRE
Assistant United States Attorney
500 East Broward Boulevard
Seventh Floor
Fort Lauderdale, Florida  33301

ROBERT C. JOSEFSBERG, ESQUIRE
25 West Flagler Street
Suite 800, City National Bank Building
Miami, Florida  33130-1780

THEODORE KLEIN, ESQUIRE
800 Brickell Avenue
Penthouse 2
Miami, Florida  33131

TED CRESPI, ESQUIRE
1776 North Pine Island Road
Suite 218
Plantation, Florida  33322

JOHN HOWES, ESQUIRE
633 S. E. Third Avenue
Suite 4-F
Fort Lauderdale, Florida  33301
```

```
                    Respectfully submitted,

                    DAVID J. JOFFE, P.A.
                    Attorney for Defendant
                    2900 Bridgeport Avenue
                    Suite 401
                    Coconut Grove, Florida  33133
                    (305) 446-5886

                    By_____
                       DAVID J. JOFFE, ESQUIRE
                       FLORIDA BAR NO. 0814164
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA


                              CASE NO. 00-6168-CR-FERGUSON
UNITED STATES OF AMERICA,      (Magistrate Judge Snow)

     Plaintiff,

vs.

PAUL ROBIN SALTZ,

     Defendant.
_____/


                ORDER ON DEFENDANT'S MOTION
                FOR SPECIFIC BRADY MATERIAL

     THIS CAUSE having come before this Court on Defendant's

Motion for Specific Brady Material, and the Court being otherwise

fully advised in the premises, it is

     ORDERED AND ADJUDGED that Defendant's Motion for Specific

Brady Material is hereby _____.

     DONE AND ORDERED at Fort Lauderdale, Broward County,

Florida, this _____ day of _____, 2000.


                              _____
                              UNITED STATES DISTRICT JUDGE
Copies furnished to:

David J. Joffe, Esquire
Lynn Rosenthal, Esquire (AUSA)
Robert C. Josefsberg, Esquire
Theodore Klein, Esquire
Ted Crespi, Esquire
John Howes, Esquire